## Manzie Shorthose, Appellee, v. Park Shorthose, Appellant.

### Gen. No. 9,377.

Opinion filed May 27, 1943.

WILLIAM R. BACH and WILLIAM J. BACH, of Bloomington, for appellant.

HOMER ENGLISH, of Bloomington, for appellee.

Mr. Justice Hayes delivered the opinion of the court.

The plaintiff, Manzie Shorthose, obtained a divorce from the defendant Park Shorthose, in the circuit court of McLean county, on the ground of habitual drunkenness for a period of two years prior to the filing of this suit. They were first married on January 3, 1923, and lived in California until 1936.

The plaintiff filed a suit for annulment of their marriage in a California court in 1935, and for a short period thereafter they occupied different rooms but lived in the same house. They then became reconciled and the suit was dismissed. In January 1936 defendant's father died and defendant inherited two farms located near Danvers, Illinois, and some other property. Shortly after 1936 they moved back to Illinois and lived on one of the farms.

It appears that defendant had been married before and obtained an interlocutory decree of divorce from his first wife in Los Angeles on May 12, 1921, and a final decree of divorce on this first marriage on October 30, 1931. Defendant states that he relied upon his lawyer obtaining the final decree, but the lawyer did not attend to it. Upon learning this he secured it himself from the court in 1931. Defendant reported to plaintiff that he was divorced. Both parties acted in good faith at the time of their marriage, but under the law of California an interlocutory divorce does not effect a dissolution of the marriage relationship until the final decree of divorce is entered. A year must elapse after the interlocutory decree is entered before final decree can be entered. *Borg v. Borg,* 25 Cal. App. (2d) 25, 76 P. (2d) 218. The marriage is not dissolved by the mere lapse of one year after the entry of an interlocutory decree but is only dissolved when the final decree is entered. *Estate of Dargie,* 162 Cal. 51, 121 Pac. 320. The courts of Illinois take judicial notice of the laws of a sister State. In a similar situation with a similar statute in the

State of Wisconsin our Supreme Court in *Mosholder v. Industrial Commission,* 329 Ill. 497 held the marriage void where it was performed prior to the divorce becoming final. Clearly the marriage of the plaintiff and defendant in 1923 which was performed prior to the final decree was void. About the first of January 1940 plaintiff conferred with a lawyer as to the legal status of her marriage and was advised they should be remarried as the first marriage was void. She then requested the defendant that they be remarried, which he consented to, and they were remarried on January 5, 1940. Without question this marriage was legal.

Shorthose and his wife had two children, a son Park Shorthose, Jr., aged 19 and a daughter Lorraine Shorthose, 17 years old. The plaintiff testified to the excessive drinking of the defendant over a long period of time, and she was corroborated by her two children, her two sisters and the husband of one of her sisters. On this question there is a sharp conflict between the plaintiff's witnesses and those of the defendant. Defendant called about 20 witnesses from the vicinity in which he lived, including the men with whom he had business dealings, his neighbors, members of the American Legion whom he associated with, his farm neighbors and help that worked for him on the farm. Their testimony was to the general effect that they had never seen him drunk—and that his drinking was quite moderate. He operated a farm close to Danvers which is a small town in a rural community, where a man's habits and conduct would be generally known. It appears that defendant never committed an act of violence towards his wife or his children. It is a matter of common knowledge that the use of alcoholic liquors to excess is usually accompanied with violence and cruelty. It further appears that he had a strong affection for his wife and made every effort to retain her. He provided the family with reasonable support. He was always at home nights and kept up

his farm work. He desired the children to attend the Danvers High School and they each wanted to go to the High School at Normal University which was further away from home. The mother sided with them, the father was overruled and the children went to Normal High.

It further appears that Mrs. Shorthose had a violent feeling against the use of alcoholic liquor. Her sisters and brother-in-law who testified in her behalf held the same feeling against the use of liquor no matter how slight.

It appears that the defendant was a truck driver in California and drove a truck many thousands of miles without an accident. He had never been arrested for being drunk or disorderly. During the time the family lived in California they had a hard time financially. When defendant's father died, defendant had very little. Defendant, since his inheritance, had paid between two and three thousand dollars on a mortgage that was on the farm at the time he inherited it, built a new garage, sunk a well, repaired the crib and bought a power outfit of tools to work the farm with. The Banker at Danvers testified his credit was good at the bank and that he kept his bills paid. A man who is enslaved by liquor usually drinks up his assets rather than acquire additional ones. The farmers in that vicinity had a cooperative grain elevator and elected Shorthose a director of their company.

Most of the specific instances on the question of drunkenness of the defendant referred to by plaintiff's witnesses were prior to the valid marriage which was on January 5, 1940. Lorraine, the daughter, testified that her father had not been drinking as much as formerly. The defendant testified that he did no drinking from February 1941 to September 1941, "and that our relations did not improve" during that time.

In examining the record, if we exclude the evidence of drunkenness prior to January 5, 1940, we find there

is very little evidence left to establish the charge upon which the decree was entered herein. The cause for the divorce must be based on what transpired subsequent to the marriage rather than prior to it.

Habitual drunkenness for a space of two years as a ground for divorce under our statute means an irresistible habit of getting drunk, a fixed habit of drinking to excess, such frequent indulgence to excess as to show a formed habit and inability to control the appetite. Occasional acts of drunkenness, however, do not make one an habitual drunkard, nor is it necessary that a person should be continually in an intoxicated state in order to come within the definition. *Garrett v. Garrett,* 252 Ill. 318; *Richards v. Richards,* 19 Ill. App. 465; *Youngs v. Youngs,* 130 Ill. 230.

Defendant testified that shortly after their remarriage he went to Hot Springs on his doctor's advice for rheumatism. Upon returning home in February he went to embrace his wife and she said, "just leave that suit case packed as it is and get out." He then inquired what he had done and she replied, "nothing, only that is what I want." He further testified that since seeing her brother-in-law she asked if the farms were in her name as well as his and that he replied they were not, although perhaps they should be. When Mrs. Shorthose was asked about this occurrence on cross-examination she admitted that she asked him for a divorce on his return from Hot Springs. On the inquiry as to whether she had asked for transfer of title on the farms, she first said "she did not," and later upon being pressed, stated, "I don't know."

A fair analysis of the evidence indicates that the defendant did considerable drinking; that the plaintiff had knowledge of this at the time of the remarriage in 1940; that plaintiff was actuated by her desire to legalize the marriage and have her children recognized as legitimate heirs of Shorthose, which was a proper and natural impulse for a mother. Defendant

promptly granted her wish in this regard. It also appears that plaintiff is a sensitive, cultured woman, and that the use of liquor is very repulsive to her. There is not much evidence in the record to show that after the remarriage she made any effort to make it successful, while it appears that defendant went for months without touching liquor with no different results in their relationship as far as the wife was concerned. Shortly after their remarriage, and without any provocation, she told him not to unpack his suit case but to get out, and she admits that she asked for a divorce at that time, as well as asked for title to the farms, to which she had contributed nothing towards obtaining, but which he had inherited. When he did not agree to the divorce she waited until the two years were up and then filed her case. It is apparent there is fault on both sides.

We are compelled to limit the evidence as to defendant's habits on the use of liquor to the time subsequent to the marriage. On this we find that the manifest weight of the evidence fails to establish habitual drunkenness for a period of two years.

For the reasons herein stated the decree of the circuit court of McLean county is reversed.

*Decree reversed.*