People of State of Illinois ex rel. Ivan A. Elliott, Attorney General, Plaintiff, v. Interstate Motor Freight System (Company), Defendant.
People of State of Illinois ex rel. Latham Castle, Attorney General, Plaintiff-Appellee, v. Interstate Motor Freight System (Company), Defendant-Appellant.

Gen. No. 10,154.

Third District.

June 10, 1958.

Released for publication June 26, 1958.

Leonard D. Verdier, Jr., and Warner, Norcross & Judd, all of Grand Rapids, Michigan, for appellant.

Latham Castle, Attorney General (Richard W. Husted, Assistant Attorney General, of counsel), for plaintiff-appellee.

JUDGE ROETH delivered the opinion of the court.

In May of 1952 the present action was instituted seeking the suspension of the commercial vehicle operators' privilege of the defendant Interstate Motor Freight System for a period of 90 days, pursuant to the provisions of Par. 229b, Sec. 132.02 of Chap. 95½, Ill. Rev. Stat. 1951. There is attached to the complaint and admitted by the pleadings evidence of 108 violations of Section 131 of "An Act in Relation to the Regulation of Traffic, Approved July 9, 1935."

The statutory provision under which this action was commenced provides in part:

"Proof that a total of ten or more convictions for violation of Section 131 of this Act have been entered during any twelve months period with respect to the operation of one or more commercial vehicles by any one commercial vehicle operator, whether operated individually or through agents, servants or employees of such commercial vehicle operator, shall constitute prima facie evidence that such commercial vehicle operator has habitually operated a commercial vehicle or more than one commercial vehicle in violation of Section 131 of this Act."

However, this section of the statute further provides that the Court shall not find a defendant to have been in habitual violation unless and until the Court has considered any offered evidence relating to the character and gravity of such violations and the extent of the operations of such defendant.

In the instant case, after a hearing in the Circuit Court, including the introduction of evidence relating to the nature and extent of the violations and to the extent of the defendant's intrastate operations, an order was entered suspending the operator's privilege of the defendant for a period of 90 days.

On this appeal the defendant contends that it is not an habitual violator within the language of the statute. Other matters initially raised in the pleadings have been eliminated from consideration by a waiver thereof in the Circuit Court and specifically those matters relating to interstate commerce and other defenses originally raised in the answer have not been urged on this appeal and accordingly are waived.

■ The opinion of this Court is based upon the consideration of what constitutes an habitual violator and accordingly it is not necessary for the Court to consider the constitutional question urged by the defendant that the statutory authorization for courts to suspend privileges granted by an administrative

agency is in violation of the doctrine of separation of powers. It is clear, however, that such a determination by a Court and the subsequent suspension is not such an inherently administrative function that cannot, under the separation of powers doctrine of our constitution, be committed to a Court. Hayes Freight Lines, Inc. v. Castle, 2 Ill.2d 58, 117 N.E.2d 106.

The undisputed evidence in this case is that during the period from September 10, 1951, to March 31, 1952, there were 108 violations or arrest tickets issued to the defendant. There is evidence, however, that four of these were arrest tickets involving the same movement within this state. The evidence thus demonstrates that 104 movements or trips out of a total of 17,799 during the period involved violations of the weight law. There is a dispute in the evidence as to the number of such cases involving a gross overload, but an examination of the individual arrest tickets demonstrates that in 49 of the cases the overweight was 1,000 pounds or less.

■ 104 violations by a defendant with an operation as large and extensive as the operation of the defendant in this case is, in the opinion of this Court, at best only prima facie evidence of habitual violation. Under the statutory language above quoted the mere showing of 10 violations would constitute such a prima facie showing. However, the fact that there were approximately 17,800 movements or trips within the state and only 104 violations indicates to the Court something less than a showing of habitual violation of the statute. The word "habitual" has a well-defined meaning. It means constant, customary, accustomed, usual, common, ordinary or done so often and repeatedly as to form a habit. Single or occasional acts do not come within the definition. The number of violations when considered in the light of the number of movements must be held to be occasional acts,

rather than acts done so often and repeatedly as to indicate a habit.

■ It is, of course, common knowledge, of which this Court will take judicial notice, that the enforcement of the weight limitation as to the weight-bearing axles is a difficult assignment and one which must be administered with care. The great volume of motor freight traffic now moving over the highways of this and other states must, of course, be regulated for the protection of all interests, including that of the carriers themselves. However, weight limitations on particular axles can be determined to be violations under the strict limitations of a statute in the event of a minor shift in the load. Such a violation, of course, is not a gross overweight but rather is a violation as to the weight limitations on a particular axle. It is not definitely ascertainable how many of the 104 violations here involved were gross, but the best indication is that only one violation was a gross overload.

The evidence as to the defendant's efforts to comply and its ever increasing activity to insure freedom from violation are undisputed. In view of the vast extent of the operations conducted by the defendant, we believe it to be clear that 100% compliance with the weight laws of this or any other state to be impossible of realization. The record before us, however, indicates a violation in only .06 of a per cent during the period in question. While it does not follow that each of the other trips involved did not involve a violation, the presumption is to the effect that such was the case.

A showing by the plaintiff of the 104 violations established a prima facie case, but it is our view of this record that such a presumption of habitual violation was amply rebutted by the evidence of the defendant as to the nature and extent of its operations. We cannot hold that this number of violations per se

constitutes an habitual violation within the contemplation or meaning of the language of the statute. For the foregoing reason the order of the Circuit Court of Montgomery county is reversed.

Reversed.

CARROLL, P. J. and REYNOLDS, J., concur.