THE CHICAGO BOARD OF EDUCATION, Petitioner-Appellee, *v.* KAREN
KOUBA, Respondent-Appellant.

First District (2nd Division)   No. 61496

Opinion filed August 24, 1976.

John Elson, of Mandel Legal Aid Clinic, and Richard Spooner, Law Student, both of Chicago, for appellant.

Michael J. Murray, of Chicago (Benito H. Smith, of counsel), for appellee.

Mr. JUSTICE HAYES delivered the opinion of the court:

The instant appeal is from an order of the Circuit Court of Cook County, Juvenile Division, entered on 31 October 1974 after a hearing, finding Karen Kouba (hereinafter respondent), then 15 years and 4 months of age, guilty of habitual truancy and committing her to the Northeastern Illinois Residential School.

In 1974, the Board of Education of the City of Chicago was (and has been for over 50 years) authorized to establish and maintain one or more parental or truant schools "for the purpose of affording a place of confinement, discipline, instruction and maintenance of children, both boys and girls, of compulsory school age, who may be committed thereto as hereinafter provided." (Ill. Rev. Stat. 1973, ch. 122, par. 34—117, since repealed by Public Act 79-365, section 1, effective August 7, 1975.) Pursuant to this authorization, the Chicago Board of Education for years maintained the Chicago Parental School as such a parental or truant school.

In 1973, however, section 5 of "An Act to establish Northeastern Illinois University * * * " (Ill. Rev. Stat. 1973, ch. 144, par. 1155, effective July 18, 1973) authorized the Board of Governors of State Colleges and Universities to establish and maintain parental or truant schools at Northeastern Illinois University "for the purpose of affording a place of confinement, discipline, instruction and maintenance of children, both boys and girls, of compulsory school age, who may be committed thereto as provided in this Section." Pursuant to this authorization, the Board of

Governors established the Northeastern Illinois Residential School. When it did so, the Chicago Board of Education discontinued the maintenance of the Chicago Parental School and, as authorized by section 5(c) (Ill. Rev. Stat. 1973, ch. 144, par. 1155(c)), began using the Northeastern Illinois Residential School as a parental or truant school for its habitual truants. In oral argument, the parties agreed that State funding for the maintenance of the Northeastern Illinois Residential School was discontinued in mid-1975, and, as a result, the Board of Governors has ceased to operate the said School.

In 1974, one procedure for committing children to a parental or truant school was spelled out in sections 34—121 and 34—122 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 34—121 and par. 34—122, since repealed by Public Act 79—365, section 1, effective August 7, 1975). The identical procedure was established by sections 5(c) and 5(d) of "An Act to establish Northeastern Illinois University * * *" (Ill. Rev. Stat. 1973, ch. 144, par. 1155(c) and par. 1155(d) respectively), for committing children to a parental or truant school such as the Northeastern Illinois Residential School; and, as noted above, section 5(c) (par. 1155(c)) authorized the Chicago Board of Education to use the said procedure. This was the procedure which was duly followed in the instant case.

Patricia Loughran, a truant (or attendance) officer of the Chicago Board of Education (hereinafter petitioner), filed a petition on 30 September 1974 in the Circuit Court of Cook County, Juvenile Division, alleging that respondent was an habitual truant and praying that the court inquire into the matter and enter such orders as the court might deem fit and proper. The petition alleged that respondent was a minor child of compulsory school age (under the provisions of Ill. Rev. Stat. 1973, ch. 122, pars. 26—1 through 26—11), namely, 15 years and 3 months; that respondent had habitually, willfully and without just cause absented herself from attendance at, and had been habitually truant from, the Holden Elementary School in which she is enrolled as a pupil, in that, on April 9, 1973, and on April 11, 1974, and on 61½ other school days "during the present and immediately prior school year," she had absented herself from attendance at the said school; that respondent's parents were both alive and living together and with respondent at a specified street address in Chicago, and that both parents had consented to the commitment of respondent to the Northeastern Illinois Residential School.

Pursuant to the provisions of section 34—122 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 34—122) (which, as noted, are identical with the provisions of section 5(d) of "An Act to establish Northeastern Illinois University * * *" (Ill. Rev. Stat. 1973, ch. 144, par. 1155 (d)), the trial court had respondent brought before the court on 10 October 1974. On

that date the trial court appointed a private attorney to represent respondent, allowed respondent's motion for discovery, and continued the cause for a hearing on 31 October 1974. There is no statutory provision for any responsive pleading to be filed by respondent, and the record contains no such pleading. As a result, no issues were formulated prior to the hearing. Since respondent's discovery motion affords some hints as to what respondent might contend at the hearing, we note that respondent sought the following discovery:

(1) All materials relating to any sociological, psychological, psychiatric, mental or physical examinations or studies of respondent which petitioner had conducted during the past three years or of which petitioner has knowledge during that time.

(2) All results and copies of any placement tests given to respondent since September of 1971 in order to determine in which "track," grade level or special educational facilities respondent should be placed.

(3) All attendance and academic records of respondent for the current semester and for the past six semesters.

(4) All anecdotal reports by school personnel in respect of respondent during the past three years.

(5) All materials in the possession of petitioner or to which petitioner has access which reflect any mitigating circumstances in respect of respondent's alleged truancy, or which relate to respondent's fitness to be committed to the Northeastern Illinois Residential School.

We note further, however, that the record does not disclose what materials, if any, respondent received as a result of her discovery motion.

On 31 October 1974 (a Thursday), the hearing was had on the truancy petition. Counsel for the Chicago Board of Education represented petitioner and the People, and respondent was represented by her appointed attorney. The petitioner was the only witness on behalf of herself and the People.

On direct examination, petitioner identified respondent in court and professed knowledge of respondent's attendance at school. Petitioner's attention was drawn to April 9, 1973, and she was asked whether she had occasion to investigate respondent's attendance at school on that date. She testified that, on that date, she had looked into the classroom in which respondent should have been, but respondent was not in the room. Thereupon, petitioner had gone to respondent's home. Respondent and her mother were at home. Respondent had refused to come to school. Petitioner's attention was then drawn to April 11, 1974. Petitioner testified that, on that date, after petitioner had spoken to the teacher in the classroom in which respondent should have been but was not, she had

gone to respondent's home. Respondent and her mother were at home. Respondent had refused to come to school. In response to a question as to whether there were any other days on which petitioner had occasion to investigate respondent's nonattendance, petitioner testified that, on 6 June 1974, she, together with a teacher-nurse, had again visited respondent's home. Respondent and her mother were at home. While petitioner spoke with the mother about respondent's truancy, the teacher-nurse spoke with respondent. Respondent refused to return to school. In purported response to a question as to when petitioner had last spoken to respondent about her truancy, petitioner testified that she had again visited respondent's home "on Tuesday of this week" (i.e., on 29 October 1974), but respondent was not at home. Respondent's mother, who was at home said that she had sent respondent to school, but respondent was not at school because, before going to respondent's home petitioner had gone to the classroom in which respondent should have been, but respondent was not in the room. Finally, petitioner testified that no reason of any kind had ever been given to her to explain why respondent was not going to school.

On cross-examination, petitioner was asked how often she had gone to respondent's home. Her answer was nine times; the visits lasted sometimes for 15 minutes and sometimes for 30 minutes. Respondent's mother was at home each time; respondent was at home some of the times, and petitioner had spoken with respondent on five of the nine visits. Petitioner was then asked whether she ever had been given an excuse. She replied that once she had been given a note from a doctor who reported that respondent had visited him on the 21st, and that she was to return to school on the 23rd (no month or year was testified to). Petitioner added that the note had been altered, but did not say in what respect.

■■ At the conclusion of the cross-examination, petitioner rested. Respondent thereupon moved for a directed finding in her favor on the following grounds:

(1) Petitioner's testimony failed to prove beyond a reasonable doubt that respondent was an habitual truant because, for one thing, there was no evidence that respondent's absences were willful, and insufficient evidence that the truancies were habitual.

(2) No testimony whatever had been presented that respondent was a fit person to be committed to the Northeastern Illinois Residential School, so that there was no testimonial basis on which the trial court could make the required finding of fitness so to be committed. There must be some showing that commitment is in the best interest of respondent, because commitment to a parental or truant school is not punitive in nature.

(3) Sections 34—121 and 34—122 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 34—121 and par. 34—122) (and by the same

token the identical provisions of sections 5(c) and 5(d) of "An Act to establish Northeastern Illinois University * * * " (Ill. Rev. Stat. 1973, ch. 144, 1155(c) and 1155(d)) are unconstitutional on their face because:

(a) they are unconstitutionally vague in that they contain no definition of habitual truancy and no standards to guide the trial court in finding that respondent is a fit person to be committed to a parental or truant school; and

(b) they violate due process in that they fail to require any showing that such commitment is either an effective remedy or, if so, the least drastic effective remedy for the said truancy; and

(c) they deny respondent equal protection of the law in the following respect: Under the Juvenile Court Act (Ill. Rev. Stat. 1973, ch. 37, par. 702—3(b)), habitual truancy is a ground for proceeding against a minor subject to compulsory school attendance to adjudicate him or her a ward of the State as a minor "otherwise in need of supervision" (referred to, for convenience, as a MINS proceeding); in such a proceeding, the standard and background for, and the range of, permissible dispositional orders, are very comprehensive and enable the trial court to comply with other constitutional rights of the minor. (Ill. Rev. Stat. 1973, ch. 37, par. 705—1(1) and (2), and par. 705—2(1)(b).) Since the Chicago Board of Education proceeds as in the instant case against its alleged habitual truants pursuant to the statutory provisions here challenged, whereas all other Boards of Education in Cook County proceed against their alleged habitual truants under the cited provisions of the Juvenile Court Act, the said statutory and actual *de facto* classification is arbitrary and unreasonable.

After argument, respondent's motion for a directed finding was denied. Thereupon, respondent elected to stand on her motion, presented no evidence in her behalf, and rested. Memoranda of law were filed by both parties. In his closing argument, counsel for respondent renewed his challenge to the constitutionality of the statutory provisions under which petitioner and the People were proceeding, and also renewed his contention on his motion for a directed finding that the evidence was legally insufficient to support beyond a reasonable doubt a finding either of habitual truancy or of the fitness of respondent to be committed to the Northeastern Illinois Residential School. We note that petitioner

never contested the applicability of the standard of proof beyond a reasonable doubt either on the motion for a directed finding or as to the final dispositional order and the findings therein. Since commitment is the only disposition authorized in the instant proceeding if the essential findings are made, that standard of proof would appear to be applicable under the decisions of the United States Supreme Court in *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, and *In re Winship* (1970), 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068. That "beyond a reasonable doubt" is the proper standard of proof on a motion by a criminal defendant for a directed finding. (See *People v. West* (1973), 13 Ill. App. 3d 550, 557, 300 N.E.2d 808, 813.) Counsel for petitioner, in his closing argument, contended that the evidence was legally sufficient to support a finding of habitual truancy and of fitness to be committed, and pointed out that, in truancy proceedings, the Board of Education customarily presented evidence of truancy on only two or three or five specific days because it was impracticable to do so for 50 or 200 days.

The trial court then immediately entered its dispositional order. In the order, the court found generally that the material facts set forth in the petition were true, and found specifically that: (1) respondent was of compulsory school age; (2) respondent was and had been guilty of habitual truancy from one of the public schools of the City of Chicago; and (3) respondent was a fit person to be committed to the Northeastern Illinois Residential School. The order committed respondent to the said School, to be kept there until she became 16 years of age unless sooner discharged pursuant to the provisions of the Parental School Act.

On 14 November 1974, respondent filed in the trial court a post-trial motion for a stay of the order of commitment, and also filed her notice of appeal from the finding of habitual truancy and the order of commitment. In the motion for a stay, it was alleged that respondent had run away from the Northeastern Illinois Residential School on 1 November 1974 and again on 10 November 1974, and that her present whereabouts were unknown. On 21 November 1974, the motion for a stay was denied.

On this appeal, respondent presents only two issues for review: whether the evidence is legally sufficient to support beyond a reasonable doubt: (1) the finding that respondent is an habitual truant; and (2) the finding that respondent is a fit person to be committed to the Northeastern Illinois Residential School. Hence, on this appeal respondent has abandoned her attack on the constitutionality of the statutory provisions under which the People proceeded against her in the instant case. In effect, respondent is contending that the trial court committed reversible error in denying her motion for a directed finding.

Petitioner in her answering brief presented the additional issue of mootness in that: (1) the statutory provisions under which this proceeding was brought have been repealed in the interim; and (2) respondent has since become 16 years of age and therefore can no longer be committed to the Northeastern Illinois Residential School or to any parental or truant school. It was also agreed by the parties at oral argument that no parental or truant school is presently being operated in Cook County.

■■ As a threshold issue, we consider first the contention of petitioner that the issues raised on this appeal are moot, so that the appeal should be dismissed *(Wheeler v. Aetna Casualty & Surety Co.* (1974), 57 Ill. 2d 184, 311 N.E.2d 134). We reject the first ground advanced by petitioner because, while sections 34—117, 34—121, and 34—122 of the School Code (Ill. Rev. Stat. 1973, ch. 122, pars. 34—117, 34—121, and 34—122) (the statutory provisions upon which the instant proceeding was based) were repealed, effective 7 August 1975, by Public Act 79—365, section 1, the *identical* provisions still exist in section 5 of "An Act to establish Northeastern Illinois University* * * " (Ill. Rev. Stat. 1973, ch. 144, par. 1155). And while the latter provisions are not presently being used because the Northeastern Illinois Residential School is not presently being operated, still the provisions constitute presently existing statutory law. We also reject the second ground advanced by petitioner because we think the instant appeal falls within one or both of two exceptions to the mootness doctrine: (1) the issues presented are of sufficient public interest to warrant consideration; and (2) there is a possibility of continuing adverse collateral consequences to respondent arising from the finding of habitual truancy.

■■ As to the matter of public interest, in *People ex rel. Wallace v. Labrenz* (1952), 411 Ill. 618, 104 N.E.2d 769, our Supreme Court said:
> "Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." (411 Ill. 618, 622, 104 N.E.2d 769, 772.)

The statutory provisions upon which the instant proceeding was based and the identical provisions which have replaced those repealed provisions have never been considered by a reviewing court. Habitual truancy is and has been a persistent problem for Boards of Education, one alleged solution for which is and has been commitment to a parental or truant school. The statutorily authorized commitment proceeding (leading, as it does, to the compulsory abridgement of the personal freedom of the truant, even though not by way of punishment for violation of the compulsory school attendance law but rather in the

alleged best interest of the truant) is a proceeding necessarily involving the juvenile truant's constitutional right to due process of law, and is therefore a proceeding which should be carefully scrutinized. For these reasons, we think the issues presented have the requisite degree of public interest.

In *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889, an appeal from a criminal conviction was held not to be moot where there was a possibility that collateral legal consequences adverse to the defendant-appellant will result, should the conviction stand. *In re Ballay* (D.C. Cir. 1973), 482 F.2d 648, applied the *Sibron* holding to an appeal of a special commitment adjudication. Illinois has applied the "adverse collateral consequences" exception to the mootness doctrine to the appeal of a finding of "person in need of mental treatment" (Ill. Rev. Stat. 1973, ch. 91½, par. 1—11) entered in a proceeding committing the said person to the custody of the Illinois Department of Mental Health. *In re Sciara* (1974), 21 Ill. App. 3d 889, 316 N.E.2d 153; *In re Graham* (1976), 40 Ill. App. 3d 452, 352 N.E.2d 387. In *Sciara* this court said:

> "Nevertheless, in our consideration of the totality of the circumstances here, we believe that the adjudication might continue to plague respondent in some future proceeding and could also affect her adversely in other respects, including her efforts to obtain employment * * *. Therefore, we are of the opinion that the collateral consequences exception should be applied, and we will consider the merits of this appeal." 21 Ill. App. 3d 889, 895, 316 N.E.2d 153, 157.

In the instant case, should the finding of habitual truancy stand, respondent may well suffer adverse collateral consequences in respect of her future employment and of her future educational opportunities. Hence, we conclude that the said exception to the mootness doctrine is applicable to the instant appeal.

For the foregoing reasons, we will consider the merits of this appeal.

On the merits, we conclude as a matter of law that the evidence in the record does not support the finding of habitual truancy beyond a reasonable doubt because it does not support beyond a reasonable doubt the "habitual" element of the finding.

■■ We think truancy may be defined as the wilful unexcused refusal of a pupil to attend school in defiance of parental authority and in violation of an applicable compulsory school attendance law. See *Ossant v. Millard* (1972), 72 Misc. 2d 384, 339 N.Y. Supp. 2d 163, and *In re Alley* (1921), 174 Wis. 85, 182 N.W. 360; and note the allegations in the instant form petition. The instant petition alleged that respondent was a minor child of compulsory school age (namely, 15 years and 3 months); that respondent had been truant from the Holden Elementary School in

which she was enrolled as a pupil on two specified dates (one in each of the last two completed academic years) and on 61½ other school days during the last two completed academic years; and that respondent's parents had consented to respondent's commitment to the Northeastern Illinois Residential School, from which one may infer that respondent's absence from school was not by parental direction or with parental consent. We think the petition sufficiently alleged habitual truancy.

At the hearing, petitioner testified to respondent's truancy on each specified date and on a third specific date in the immediately preceding academic year and on a fourth specific date in the then current academic year. On each of these dates, petitioner, after having personally ascertained that respondent was absent from school, had visited respondent's home. On three of the dates, respondent had been at home. On the fourth date in the current academic year, respondent had not been at home; respondent's mother who was at home had informed petitioner that she (the mother) had sent respondent to school, but petitioner had already ascertained that respondent was not in school. On cross-examination, petitioner testified that she had visited respondent's home on nine occasions, but petitioner did not testify that the additional five visits had each been triggered by the ascertained absence of respondent from school on the day of the visit. Petitioner also testified that respondent had never offered petitioner any explanation or excuse for her absence from school, except for one note from a doctor, which note had been altered in some respect which petitioner did not explain.

The total number of alleged days of absence during the past two completed academic years and the current academic year was 63½ days. Even if we infer that each of the nine visits which petitoner made to respondent's home during the past two completed academic years and the current academic year had been triggered by the ascertained absence of respondent from school on the day of the visit, petitioner's testimony has established at most nine days of truancy in more than two academic years.

No attempt whatever was made to establish the other alleged 54½ days of truancy. In his closing argument, counsel for petitioner told the court that it was customary to present evidence of only two or three or five days of truancy, because it was impracticable to present evidence of 50 to 200 days of truancy. We think counsel's observation amounts to a concession that evidence of two or three or five days of truancy could not, in itself, support beyond a reasonable doubt an allegation of habitual truancy. Webster's Third New International Dictionary defines "habitual" as "a pattern or mode of behavior acquired and developed by frequent repetition." In *People ex rel. Elliot v. Interstate Motor Freight System* (1958), 17 Ill. App. 2d 547, 150 N.E.2d 879, this court had occasion to

discuss the meaning of "habitual" as the word was used in a statute regulating the suspension of privileges of commercial vehicle operators who were habitual violators of weight and load limits (Ill. Rev. Stat. 1951, ch. 95½, par. 132.02). We stated:

> "The word 'habitual' has a well-defined meaning. It means constant, customary, accustomed, usual, common, ordinary or done so often and repeatedly as to form a habit. Single or occasional acts do not come within the definition. The number of violations when considered in the light of the number of movements must be held to be occasional acts, rather than acts done so often and repeatedly as to indicate a habit." (17 Ill. App. 2d 547, 550, 150 N.E.2d 879, 881.)

Moreover, we see nothing impracticable in offering the school attendance records to establish respondent's absence from school on each of the 54½ days constituting the balance of the alleged 63½ days of truancy, thereby permitting a reasonable inference, in the light of the proof that the nine days of absence were days of truancy, that the 54½ remaining days of absence were also days of truancy, which inference, if uncontradicted as in the instant case, would suffice to prove habitual truancy beyond a reasonable doubt.

■■ In the instant case, however, respondent was proved beyond a reasonable doubt to have been truant at most on only nine days in a period of more than two academic years, which would constitute only about two percent of the total number of school days involved. Just as one swallow does not make a summer, we hold that, as a matter of law, nine days of truancy during a period of more than two academic years does not constitute proof of *habitual* truancy *beyond a reasonable doubt.* The nine days must be held to be merely occasional acts of truancy. *People ex rel. Elliot v. Interstate Motor Freight System* (1958), 17 Ill. App. 2d 547, 150 N.E.2d 879; *Shorthose v. Shorthose* (1943), 319 Ill. App. 355, 49 N.E.2d 280.

In view of our holding as to the essential finding of habitual truancy, it is unnecessary for us to deal with the other specific finding that respondent was a fit person to be committed to the Northeastern Illinois Residential School.

For the foregoing reasons, the dispositional order of 31 October 1974 is hereby reversed.

Reversed.

STAMOS, P. J., and DOWNING, J., concur.