401 P.2d 238

**BAKER-THOMAS LIME & CEMENT CO., Inc., an Arizona corporation, Appellant,**

v.

**ARIZONA CONCRETE PIPE CO., Inc., an Arizona corporation, Appellee.***

**No. I CA–CIV. 16.**

Court of Appeals of Arizona.

April 26, 1965.

Review Denied June 22, 1965.

---

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7492. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

234

---

Snell & Wilmer, Phoenix, by Mark Wilmer, Donald R. Kunz, Phoenix, for appellant.

Spector & Johnson, Phoenix, by Richard E. Johnson, Bernard L. Bebeau, Phoenix, for appellee.

STEVENS, Chief Judge.

The parties will be referred to as they appeared in the trial court. The Plaintiff-Appellee filed suit for negligence and for breach of warranty. The case was submitted to the jury on the negligence theory alone and the jury returned a verdict for the plaintiff.

At the close of the plaintiff's case, the defendant moved for a directed verdict. This was denied. The defendant offered no evidence. The defendant excepted to certain instructions. By timely motions, the defendant moved for judgment notwithstanding the verdict and in the alternative for a new trial. These motions were denied and this appeal followed.

The principal business of the plaintiff is the manufacture and sale of concrete pipe. The plaintiff has been engaged in this business for some period of time and is an expert in the field. The size of the pipe fabricated varies and in pipe of the larger dimensions, reinforcing steel is an integral component. After a section of pipe has been poured, it is cured by placing it in an area where it is constantly bathed in a fine mist for a number of days.

When two pieces of pipe are joined together in the field, a cement collar is poured to seal the joint. For a number of years the plaintiff and its companion company have used a product known as "Hunt's Process Cement Curing Compound", this being sprayed upon the finished collar to aid in the curing of the collar. For the purpose of this opinion, this particular product will be referred to as "Hunt's" even though the curing compound is not the only cement aid made by the Hunt people.

One of the aids in the manufacture of the concrete pipe, particularly reinforced concrete pipe, is an "air entraining agent". This is for "internal use only" whereas "Hunt's" is strictly for "external use only". Approximately 9 ounces of an air entraining agent is used in mixing a 40 yard batch of concrete. While it is true that the Hunt people manufacture an air entraining agent, the evidence discloses that the air entraining agent here involved is a product known as "Darex". The testimony discloses that an air entraining agent when introduced into a batch of concrete which is being mixed acts in a manner similar to detergent. The function of this type of agent is to bubble the concrete mix and to assist the concrete in establishing a good bond with the reinforcing steel. "Hunt's" (as that name is used in this opinion) has the opposite effect and actually hinders the bonding of the cement and the reinforcing steel. The plaintiff had used an air entraining agent in the manufacture of pipe for

some three years next before the time which is material to this case. Four or five different brands had been used. Mr. Mayfield was one of the plaintiff's mixer operators and was the operator in connection with the matters before the court. His testimony, that he had started to use an air entrainer agent in the mixes about the time of the incident in question, differs somewhat from the testimony of Mr. Shumway. Mr. Shumway is the plaintiff's President and principal stockholder. He testified that Mayfield had been trained in this operation and had used air entraining agents. Mr. Mayfield had been a mixer operator for approximately 4 years and was also generally familiar with the process of curing concrete.

At the time that the product which is the subject of this action was secured by the plaintiff from the defendant, Mr. Shumway was absent from the plant and for several days thereafter while the product was being used, was absent from the plant and often absent from the city, on business. The plaintiff was making a large order of sizeable reinforced pipe for a specific job. The air entraining agent being used in connection with the making of this pipe was "Darex". "Darex" as well as "Hunt's" was purchased in 55 gal. steel drums or barrels. The drum, containing the air entraining agent used in connection with the mixing of the concrete, was tipped and placed on a stand or blocks near the mixer with a spigot inserted so that the contents could be withdrawn into a bucket of 3 to 5 gals. capacity. The bucket was then taken to the mixer and the approximate amount of the air entraining agent was then introduced into each batch of concrete as it was being mixed. During the process of the manufacture of the pipe in question, the mixer was being operated by Mayfield and he was using "Darex" in the mix. His supply of "Darex" was running low. He thereupon contacted the yard foreman and the yard foreman testified:

"A. Mr. Mayfield, the man that mixes the batches of cement, come over and informed me they were about to run out of a product called Darex, and I ordered more."

The foreman then made out an order for a drum of "Darex" and he gave the order to Ken, an employee, a college student working during the summer vacation, a young man who had had at least some limited experience in connection with concrete. Ken took the order to the defendant. The order plainly specified "Darex". The evidence is silent as to there being any communication from the plaintiff to the defendant as to the urgent need for "Darex" or that the plaintiff was batching cement and that the supply of "Darex" was running low. Ken went to the defendant's place of business and at the office exchanged the plaintiff's order for a sales slip signing the acknowledgement of receipt in the office. Above the signature the following appears: "Thank You. In case of error or exchange, please return this bill". Ken then presented a copy of this document to the defendant's warehouse and employees of the defendant loaded a drum of "Hunt's" onto the plaintiff's truck. The drum was plainly marked with the following words "Hunt Process", "Concrete Curing" and with the phrase "Spray It and Forget It". From the illustrative photograph received in evidence, the drum appears to be the standard type of drum.

Ken did not aid in the loading of the truck nor did he inspect the drum at the time. The drum was taken to the plaintiff's yard where the foreman did not see it. Ken and Mayfield unloaded it, inserted the spigot and tipped the drum so that the contents could be withdrawn into the bucket. These employees of the plaintiff did not observe the sign on the drum. The photograph discloses a sign on the drum which is large enough and plain enough that the jury could well have concluded that the plaintiff's agents were negligent in their failure to observe it. As the drum was placed for use the sign on the drum was toward the ground and not visible. Mayfield then proceeded to use "Hunt's" in his

mixes for several days. Mayfield testified that he was not aware of the difference in appearance or odor between "Hunt's" and "Darex".

When Mr. Shumway's business permitted, he returned to the yard and undertook a routine inspection of the operations. He testified:

"A. Well, I make a general, routine checkup with the yard periodically, and I was going through the general, routine checkup and I come to the mixer and saw a barrel setting there, saw the material setting there.

"And I asked the mixer man how long he had been using that material. And he gave me the date that he had started using it.

"And I told him to stop immediately using it, which he did, and ordered an air entrainment and proceeded the next day to go ahead with the work.

"Q. Now, Mr. Shumway, you say you saw a barrel, Was it lying down or standing up?

"A. It was laying down.

"Q. And what caused you to look at the barrel or examine it?

"A. Well, it was because, after 30 years of work, I can distinguish very readily the air entraining agent and your different curing compounds.

"Q. And how did you go about determining this?

"A. Well, when I *looked* at *it* the color didn't look right, so I put my finger in it. And when I did, why, it was an oily substance. So I raised the barrel up to see what the label said on the barrel."

In relation to Mr. Shumway's discovery, Mr. Mayfield the operator of the mixer testified:

"And you can imagine what happened then."

In the mean time, a great deal of pipe had been made by the insertion of a concrete curing compound rather than air entraining compound and the pipe was not suitable for the purpose for which it was made.

The evidence discloses that the plaintiff had used "Hunt's Curing Compound" for many years and certainly Mr. Shumway was acutely aware of the differences in the two products.

The defendant admits that its employees were negligent in disregarding the order for "Darex" and in placing a drum of "Hunt's" on the plaintiff's truck. The defendant urges that when the defendant's employees placed the wrong product on the truck the defendant's negligence came to rest; that the necessary element of foreseeability was absent; and that the necessary element of proximate cause was absent. The defendant urges that the sole proximate cause of the damage sustained by the plaintiff was the negligence of the plaintiff's employees.

The plaintiff urges that if there was any negligence on the part of the plaintiff, such negligence was at most contributory negligence and that the issue of contributory negligence was submitted to the jury and resolved in favor of the plaintiff. The defendant concedes that issues of contributory negligence are jury questions under Section 5, of Article 18 of the Arizona Constitution, A.R.S. which states in part, "The defense of contributory negligence * * * shall, in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury". At the same time the defendant strenuously urges that there was no proper issue of contributory negligence in this case, in that before there can be an issue of contributory negligence the plaintiff must first prove negligence and proximate cause in relation to the acts of the defendant.

The defendant's position was urged in the trial court by the motion for directed verdict, it was urged in the matter of the settling of instructions, and it was urged in the motion of judgment notwithstand-

ing the verdict and in the alternative, for a new trial. The same position is urged here. The plaintiff urges that at some point of time the defendant changed its approach and the court cannot agree with this contention.

The instructions were the standard instructions on negligence and proximate cause in relation to the claimed liability on the part of the defendant and contributory negligence and proximate cause in relation to the defense of contributory negligence. The defendant did not waive its previous position by the instructions on contributory negligence. Under the instructions the defendant was free to argue that even though there was a negligent act in the delivery of the wrong product, the jury must find both negligence and proximate cause before the liability could be imposed upon the defendant. As a matter of law, the jury could not have found for the plaintiff in the absence of finding both negligence and proximate cause in connection with the actions of the defendant.

The defendant urges that under the record as outlined above, there was no jury question and that the trial court and this court must rule as a matter of law for the defendant. The plaintiff urges that there is no substance to the position of the defendant and we cannot treat the defendant's position that lightly.

While the jury could well have found an absence of proximate cause flowing from the misdelivery by the defendant, we believe that this was a fact problem peculiar to the jury and peculiar to the trial court in connection with the motion for new trial. While it is true as stated in West v. Cruz, 75 Ariz. 13, 251 P.2d 311 (1952), that a man's responsibility for his negligence must end somewhere, we cannot say as a matter of law that under the circumstances of this case it was not foreseeable that the employees of the plaintiff might fail to exercise due care. It is our opinion in this case that the act of the defendant in delivering the wrong product and the acts of the plaintiff's employees in failing to use due care,

were in such close proximity in point of time that the acts of both the plaintiff and the defendant created a jury question relative to the presence or absence of a concurring responsibility for the damage which the plaintiff sustained. At most the negligence of the plaintiff was one of the proximate causes of the injury and the damage rather than the sole proximate cause of the injury or damage. The trial judge is a 13th juror. Caldwell v. Tremper, 90 Ariz. 241, 367 P.2d 266 (1962). An Appellate Court is not a 13th juror. We do not substitute our judgment for that of the trial court. Judgment affirmed.

CAMERON and DONOFRIO, JJ., concurring.