405 P.2d 285

Ralph L. MEYER and Peggy Ellen Meyer, husband and wife, Appellants,

v.

Ronald J. RICKLICK and Ray J. Ricklick, Appellees.*

No. 1 CA–CIV 34.

Court of Appeals of Arizona.
Aug. 30, 1965.
Rehearing Denied Oct. 5, 1965.

McKesson, Renaud, Cook & Miller, by William J. Knudsen, Jr., Fred J. Pain, Jr., Phoenix, for appellants.

Gordon G. Aldrich, Phoenix, for appellees.

STEVENS, Chief Judge.

Mrs. Meyer received a jury verdict in the sum of $5,500.00 in a personal injury action

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7648. The matter was referred to this Court pursuant to Section 12–120.23 A.R.S.

and judgment was entered on the verdict. Her motion for new trial urging the inadequacy of the award was denied. The inadequacy of the award is the issue for the consideration of this court on the appeal.

◼ We recognize that the trial judge sits as a 13th juror. Caldwell v. Tremper, 90 Ariz. 241, 367 P.2d 266 (1962). The Appellate Court does not occupy the same position. Baker-Thomas Lime & Cement Co., Inc. v. Arizona Concrete Pipe Co., Inc., 1 Ariz.App. 233, 401 P.2d 238 (1965). Appellate Courts are more liberal in sustaining the granting of a motion for a new trial than in sustaining the denial of a motion for a new trial. Caldwell. The power to grant a new trial should be exercised to prevent injustice. Dennis v. Stukey, 37 Ariz. 299, 294 P. 276 (1930). This Court will uphold the action of the trial court in denying the motion for new trial unless there appears to be an abuse of discretion resulting in an injustice.

In October 1956 Mrs. Meyer commenced her employment as a real estate salesman, this being her first effort in this field of endeavor. Her compensation was strictly on a commission basis. Her monthly earnings increased as time went on but fluctuated from month to month. On February 12, 1958, she was injured in an intersection accident being the accident which is the subject of this litigation and some time thereafter she filed suit. The jury trial was held in October 1961 and six trial days were consumed in the trial. The reporter's transcript, including arguments and instructions, required in excess of 900 pages. By returning a verdict in favor of the plaintiff, the jury found for the plaintiff on the question of liability and from our study of the reporter's transcript, we find no fault with this determination.

Following the accident and prior to the filing of suit Mrs. Meyer saw several osteopathic physicians and also secured chiropractic treatments. Her progress was not satisfying to her. She continued in pain.

She made efforts to return to her work as a real estate salesman but was not able to work effectively. There were many phases of her housework which she could not accomplish. She was a married woman with children. Not being satisfied with the progress she was making, her physician referred her to an osteopath with an orthopedic specialty and in September 1959 a herniated disc in the low back area was removed by surgical procedures. As of the time of the trial, Mrs. Meyer testified that she continued in pain. The surgeon testified that she sustained a 25% functional disability in certain areas of her back, that as of the time of trial she had reached her maximum recovery and that her condition was one with which she would have to live. Mrs. Meyer testified that just prior to the accident she was in excellent health except for an occasional sinus headache and she was unaware of any personal physical disability. The sinus condition was one of long standing having existed even prior to the year 1951. Except for the sinus condition, the doctors attributed her suffering, her inability to work and her physical condition to the 1958 accident.

In the year 1951 Mrs. Meyer sustained some injury in an automobile accident. Immediately following the accident she was stiff and sore for a time. She received limited osteopathic treatments following the 1951 accident. She testified that she was not aware of any residuals flowing from the 1951 accident. The evidence disclosed that her back had congenital abnormalities especially in relation to the degree of the curve in the low back area. The doctors testified that many people have congenital deviations from the normal without being aware of this fact. They further testified that the opinions as to the extent of deviation from the normal is often a matter of the opinion of the individual doctor.

During the course of the trial Mrs. Meyer presented a series of medical, drug and other bills in relation to her efforts to recover from the effects of the accident, these

totaling the sum of $5,497.45. She stated that there were some bills which she had paid which were not included in this total. She stated that some of the items contained within the total had been paid and some had not been paid. In relation to some of the items there was no affirmative testimony as to the reasonableness of such items. Included within the above figure was the expense of surgery and post surgical care in the sum of $3,546 which the surgeon testified was reasonable and which had not been paid. The surgeon testified that he hoped to be paid regardless of the outcome of the litigation. At the time of the offer into evidence of this series of bills, there was a brief foundational objection which was overruled and the bills were received into evidence. In the defendant's argument to the jury, the matter of these bills and the claimed impropriety of any or all of them was not mentioned. This Court expresses no opinion relative to the individual items making up the foregoing total.

Mrs. Meyer testified that as she became more experienced in the field of selling real estate, her earnings increased. Other real estate sales people testified that her experience in this respect followed the usual pattern. When asked to estimate her earnings over the six months period immediately preceding the accident, she estimated her earnings to be an average of approximately $500.00 per month. The defense produced records from the real estate company as to her earnings and the attorneys disagreed as to the proper interpretation of the records. It is sufficient for the purposes of this appeal to state that the records affirmatively reflect earnings up to the date of the accident.

It is interesting to note that in the arguments to the jury, Mrs. Meyer's attorney anticipated a possible defense argument relative to the jury's observations as to her ability to move about the court room during the trial. Defense counsel called the attention of the jury to Mrs. Meyer's "apparent agility" during the trial and commented "I don't think that Mrs. Meyer's physical appearance or behavior showed that she is in any great pain".

The matter of the size of verdicts whether they be urged to be excessive or whether they be urged to be inadequate, places a great responsibility upon the trial judge. An even greater responsibility is placed upon an appellate court in that the appellate court does not have the opportunity of listening to the evidence and observing the witnesses. In relation to the issues on this appeal, plaintiff's counsel directs the court's attention to a comparatively recent line of cases found in 20 A.L.R.2d beginning at page 276 together with the supplements thereto. In substance the plaintiff urges that there are two separate and distinct functions of the jury, the first being to find the presence or absence of liability and the second, if liability is found, being to make an adequate award. It is our opinion that notwithstanding general principles, each case presents a separate and distinct problem and must be carefully considered based upon the record presented to the appellate court.

In the year 1921 the Arizona Supreme Court, speaking through Mr. Justice Baker, had under consideration the claimed inadequacy of a $1.00 verdict granted to a plaintiff in an Employer's Liability Law case. The injured workman in that case lost some 70 days work due to the injury, suffered pain as a result of the injury and was under medical attention. The case in question is Ocana v. Ray Consolidated Copper Company, 22 Ariz. 112, 194 P. 959 (1921). In the reported decision we find the following language:

"* * * The jury in finding a verdict for the plaintiff must have found that the plaintiff was free from negligence and that he was entitled to recover such damages as he had sustained. Having reached the conclusion that the plaintiff was entitled to recover, the jury should

 

have found a verdict sufficient to compensate him for his injuries. If the plaintiff was not entitled to recover, the verdict should have been for the defendant. It will not do to say that the jury must have been convinced that the plaintiff had no cause of action and that in a spirit of liberality they found the verdict for the trifling sum of $1 in order to save the plaintiff from the cost of litigation. This would be to place the jury distinctly in the wrong and do an injustice to the defendant. Neither can it be said that the verdict may be regarded as practically and in effect a verdict for the defendant. The verdict imports a verity as to the party in whose favor it runs.

\* \* \*

"The plaintiff was certainly entitled to recover for the time lost by him as the result of the accident, to say nothing of compensation for the injury, pain, inconvenience, and suffering involved in the occurrence. The court should and always will be careful not to usurp the functions of a jury, neither will the court be prompt to overrule the exercise of the discretionary power vested in the trial court in passing upon motions for a new trial; yet it is the bounden duty of the reviewing court to protect parties from improper verdicts rendered through misconception, prejudice, or passion."

From a review of the record in this particular case, it is our opinion that the motion for a new trial should have been granted. This case is remanded for a new trial on all issues.

DONOFRIO, J., and EDWIN THURSTON, Superior Court Judge, concurring. NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved

from consideration of this matter, Judge EDWIN THURSTON was called to sit in his stead and participate in the determination of this decision.