405 P.2d 288

**Charmaine M. SNYDER, by her Guardian ad litem, Dorothy Snyder, Appellant,**

v.

**Robert G. BEERS and Jane Doe Beers, his wife, Appellees.***

**No. 1 CA–CIV 23.**

Court of Appeals of Arizona.
Aug. 30, 1965.
Rehearing Denied Sept. 28, 1965.
Review Denied Oct. 13, 1965.

to this Court pursuant to Section 12–120.23 A.R.S.

Charles Christakis, Phoenix, for appellant.

Moore, Romley, Kaplan, Robbins & Green, by Philip A. Robbins, Donald R. Wilson, Phoenix, for appellees.

STEVENS, Chief Judge.

The plaintiff in this action had finished her sophomore year in a Phoenix high school and she had enrolled for the fall semester beginning in September 1958. On November 12, 1958, shortly after her 16th birthday, she was a passenger in an automobile driven by Jo Ann Ashworth. The automobile was the family car of Mrs. Ashworth and her husband. Mrs. Ashworth was 17 years of age at the time.

The Ashworth vehicle was proceeding in a Southerly direction preparatory to turning left at an intersection. The vehicle was stopped before entering the intersection as directed by a red traffic signal. When the electrical traffic signal turned green for North and South bound traffic, the Ashworth car commenced its left turn. The evidence indicated that the flashing light signal of the vehicle was in use and that a conventional left hand arm signal was also given. In the center lane for North bound traffic on the same street on which the Ashworth vehicle was being driven, there was a car which had stopped in response to the red light and was preparing to make a left hand turn. As the defendant Beers approached the intersection, driving in a Northerly direction, the light was green for traffic proceeding Northerly and he passed to the right of the North bound vehicle which was waiting for the left turn. In the Easterly portion of the intersection the Beers vehicle struck the right front of the Ashworth vehicle, the point of impact with reference to the Beers vehicle being the left front. This suit was filed in June 1959 against both the Ashworths and the Beers. Upon the

completion of the trial on the 27th of June, 1961, the jury rendered its verdict in favor of the plaintiff and against the Beers in the sum of $300.00 there being no verdict against the Ashworths. The verdict was reduced to judgment. The plaintiff does not appeal from the verdict exonerating the Ashworths. This appeal is by the plaintiff from the $300.00 award. On the appeal it is urged that the verdict is inadequate, that there was improper cross examination by insinuation as to one of the witnesses, that there was improper argument to the jury and that certain high school records were improperly received in evidence. We are mindful of our decision of this day in the case of Meyer v. Ricklick, 1 Ariz.App. 494, 405 P.2d 285 (1965). Therein we stated that "It is our opinion that notwithstanding general principles, each case presents a separate and distinct problem and must be carefully considered based upon the record presented to the appellate court".

The Court has carefully read the 470 pages of the reporter's transcript of the procedures and testimony reflecting the record prior to the point when all parties rested and has read the motions and arguments thereafter.

█ The evidence will be viewed in the light which will sustain the verdict. Curlee v. Morris, 72 Ariz. 125, 231 P.2d 752 (1951).

It is our opinion that it will serve no useful purpose to engage in a detailed recitation of evidence. The record reflects the names of many doctors who were consulted by the plaintiff. Many of these consultations were on a one visit basis. Not all of the doctors who did testify presented a factual issue for the jury's determination in relation to the causal connection between the plaintiff's complaint and the accident. The matter of adequate foundation and sufficiencies of proof as to the amount of the special damages claimed arising out of the care and treatment of the plaintiff, likewise left matters for jury determination. The plaintiff testified as to many matters which were controverted by the testimony of other witnesses, leaving large areas of her testimony for jury evaluation.

█ There was testimony to the effect that the plaintiff was a passenger in an automobile at Easter time in the year 1958 when that car was struck from the rear. The plaintiff's description of the accident indicated a very minor accident and she affirmatively testified that she sustained no injuries. One of the witnesses testified that the plaintiff did complain of residuals attributable to the early 1958 accident and that the plaintiff complained thereof prior to the accident in question. At the time of the early 1958 accident the plaintiff was engaged to the man to whom she was married at the time of the trial. It is in relation to the cross examination of her husband that the plaintiff urges that there was improper cross examination by insinuation. No objection was made at the time of the examination. There was no motion to strike any portion of his testimony. In many respects the cross examination followed the line of inquiry relative to previous testimony as to the plaintiff's complaints concerning residuals of the early 1958 accident and in some respects enlarge upon the earlier testimony. This cross examination did not corroborate the earlier testimony just referred to. This Court does not find any overreaching by defense counsel and finds nothing in this phase of the case which would cause this Court to apply a rule different from that set forth in Bruno v. San Xavier Rock & Sand Co., 76 Ariz. 250, 263 P.2d 308 (1953), that one cannot raise on appeal matters which were not properly presented to the trial court. We make a like observation in relation to the claimed errors in the defendants' argument to the jury.

We now consider the high school records complained of.

In Arizona we have a rule commonly called "The Business Records Rule" which is found in both Section 12–2262 A.R.S.

and in Rule 44(q) of the Rules of Civil Procedure, 16 A.R.S. Sub-sections A and B of Section 12–2262 are as follows:

"A. In this section the term 'business' includes every kind of business, profession, occupation, calling, or operation of institutions, whether or not carried on for profit.

"B. Business records. Any record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as justify its admission."

It is in relation to the records of the high school and their admissibility that the application of The Business Records Rule is before us for our consideration. The defendant urges that the rule authorizes the admission into evidence of all routine records kept by the high school in relation to the plaintiff save and except those expressing a professional opinion. We believe that the Business Records Rule is not as all encompassing as some attorneys urge. In this case, however, we do not find it necessary to engage in a detailed discussion of the rule.

■ The plaintiff objected to the attendance record showing the plaintiff's many days of absence from the school. This record was in direct conflict with the plaintiff's testimony. This chart contained no comments and was limited to a pencil mark in each appropriate day of absence. This is a record which the school needs to enable it to make those reports to the State of Arizona in relation to State Aid which is based upon "Average Daily Attendance". We have no problem in sustaining the admission of this into evidence.

There was no objection made to the record of the school showing that the plaintiff withdrew from school almost a month before the accident and this record is in conflict with her testimony. There was no objection made to the health record which was introduced into evidence.

These records were presented in the form of photostatic reproductions so that the face and reverse side of each record was a separate exhibit. The exhibit showing the reverse side of the attendance chart was received over objection by the plaintiff. This exhibit contained some conclusions in matters which were not direct quotations from or directly attributed to, information received from the plaintiff.

This exhibit contains the following recitations:

"10/2 No ans—Very ill at home— Mrs. Borek to phone mother about Home Bound. Mother's Bus. Phone AM 5–1221 –
          Betti.

"10/6 Will see doctor in two days. Will know then if can return. Will let us know.
          ET.

"10/8 Reported to L. Walker,
          M. Borek

"10/15 Girl is under doctor's care. Mother said she will apply for Homebound Program. We may take her name off our rolls.
          M. Borek"

■ The entries in and of themselves disclose an absence of the source of information, or disclose contemplated action by the school, or information from the plaintiff's mother. We make no ruling as to whether entries of this type might be appropriate in relation to the school's relationship to a pupil. This Court expressly refrains from comment in relation to hospital records and the application of the Business Records Rule to such records. In the case of Welch v. Medlock, 79 Ariz. 247, 286 P.2d 756 (1955), the Arizona Supreme Court at page 251 of the Arizona

Reports, at page 759 of 286 P.2d, expresses the philosophy behind the Uniform Business Records as Evidence Act, stating that the act,

> "* * * was no doubt intended to liberalize and broaden the 'shop book rule' and to enlarge the operation of the business records exception to the hearsay evidence rule".

In that case the Court did not admit into evidence a document which the Court felt did not come within the purview of the act. It is not every entry or document which a business or an institution may find it appropriate to have reflected in its records which is thereby admissible under the Business Records Rule.

█ The entries in question in this exhibit relate to the plaintiff but they are not attributable to the plaintiff as the source of the information. It is our opinion that this holding is not in conflict with the case of Higgins v. Arizona Savings and Loan Association, 90 Ariz. 55, 365 P.2d 476 (1961). It was error to receive this exhibit into evidence. The matters set forth in this exhibit were cumulative. The error in the receipt of this exhibit into evidence is not of such magnitude as to require a reversal of this case.

█ The plaintiff objected to the receipt of the health center attendance record. The evidence indicated that a daily log is maintained in the health center and that the entries therein were made by a school nurse or if she was absent or otherwise occupied, then by students especially assigned to this work and performing these functions under the direction of the nurse. It is the duty of these students to record the complaints of the students for the use of the nurse. The daily log entries are thereafter transcribed on to the individual's health card. In our opinion, the foundation was adequate, the weight to be attributed thereto being a question for the consideration of the jury. The plaintiff did not take the stand in rebuttal to the entries in this record.

█ From an examination of the entire record the jury could well have concluded that in the accident the plaintiff suffered minor damages as a result of the accident. The entire record is such that the jury could well have been not favorably impressed by the plaintiff's protestations of injury. Possibly the testimony of one of the physicians had an influence upon the jury when the deposition introduced into evidence reflected the following answer:

> "I got the impression that this is a beautiful rather spoiled young woman whose parents had given her every opportunity and indulged her. This is a psychiatrist's offhand off-the-cuff opinion."

In relation to this statement, he further testified:

> "While it is an opinion, it is part of an examination, the opinion of the doctor. And I had this feeling in examining her."

When asked with reference to the effect that knowledge of the fact that she had dropped out of school before the accident would have upon his opinion, he stated:

> "It might suggest that there were other factors which accounted for her dropping out of school apart from the accident."

When asked to list causes of the plaintiff's problems not relating to trauma, we find the following answers:

> "Anxiety over school, problems over, say relation to parents, problems having to do with the heart.
>
> "Question: Love, you mean?
>
> "Answer: Yes. I would include that as a problem of the heart. Marital difficulties and anticipation of. All these are of significance and may have something to do with this type of symptomology.
>
> "Question: The psychiatric diagnoses that you have made, I think you did state were not upon an organic basis, is that correct?
>
> "Answer: That is correct.

"Question: Do you believe, Doctor, that one who has an emotional disturbance which may be related to an accident, that this condition would be considerably alleviated by the final disposition of the accident and all its involvements, including the lawsuit?

"Answer: Of Course."

After considering the entire record, we are unable to state that the jury verdict was inappropriate in amount. The judgment is affirmed.

DONOFRIO, J., and EDWIN THURSTON, Superior Court Judge, concurring.
NOTE: Judge JAMES DUKE CAMERON having requested that he be relieved from consideration of this matter, Judge EDWIN THURSTON was called to sit in his stead and participate in the determination of this decision.

* This appeal was filed with the Arizona Supreme Court and assigned that Court's Number 7576. The matter was referred