VICKIE ELAINE SIMMONS *v.* STATE OF INDIANA

[No. 2-976A332. Filed January 23, 1978.]

*John H. Meyers,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert L. Clegg, III,* Deputy Attorney General, for appellee.

## CASE SUMMARY

BUCHANAN, J. — Vickie Elaine Simmons (Vickie) appeals from a judgment declaring her a delinquent child due to habitual truancy and incorrigibility, claiming certain school attendance records were erroneously admitted and the evidence was insufficient to sustain a finding of habitual truancy and incorrigibility.

We affirm.

## FACTS

The facts most favorable to the State reveal that on February 25, 1976, a Verified Petition Alleging Delinquency was filed against Vickie by the Tippecanoe County Probation Department. A fact finding hearing was held on April 1, 1976.

The basis for the petition was that Vickie, then fourteen years of age, was "incorrigible, ungovernable, habitually disobedient, and beyond the control of her parents, guardians, and other custodians", and that she was habitually truant.

Vickie lived with her parents in Tippecanoe County, Indiana, and attended Klondike Junior High School (Klondike) in Tippecanoe County.

Between November 3, 1975, and January 6, 1976, Vickie was listed as having been absent without excuse from Klondike for fifteen (15) of the forty-five (45) school days within that period. Specifically, she was absent on: November 6; 18; 19; 26; and 27. During the month of December she was absent, without excuse, on the 5th and the 12th. In January she was absent the 5th, 6th, 9th, 12th, 13th, 14th, 15th, 16th. Further, between January 16, 1976, and February 25, 1976, she had thirteen (13) unexcused absences in

seventeen (17) school days.

An "unexcused absence" at Klondike was an absence for which the school had not received a valid excuse from the student's parents. Such an excuse could be by telephone or by note. The attendance records of Klondike contained no excuses for Vickie.

Not all absences, however, were Vickie's doing. While the record does not reflect the precise dates, (indeed, all witnesses were vague as to dates), it appears that some unexcused absences after February 23, 1976 were due to Vickie's being incarcerated or otherwise detained by authorities. Finally, at a time not appearing in the record, Klondike excluded Vickie from attending any classes.

Robert W. Maier, the attendance and social worker for the Tippecanoe School Corporation, testified that he spoke to Vickie's parents regarding Vickie's attendance, on several occasions.

In addition to having missed classes, Vickie ran away from home several times. While the record is virtually barren as to precise dates, Emmett C. Simmons (Simmons), Vickie's father, testified that Vickie had been absent from home without permission on at least four occasions. On one such occasion, probably during the last part of January, 1976, she had been absent for two weeks before she was seized. After one absence Vickie was placed in the Scholar Home by the authorities . . . and promptly ran away after having been there two hours.

Saundra Simmons (Saundra), Vickie's mother, testified that Vickie had run away from home on more than one occasion. Though Saundra was unable to testify as to precise dates, she did say, "I'd say she's been gone about half of the last three months". Following one such event Vickie was detained by the police. Upon her release from police custody, she promptly ran away again.

From time to time, when her whereabouts was unknown, Vickie would call her mother and state, "Hi, Mom, I'm fine. I'll call you tomorrow."

Saundra was aware that Vickie had school attendance problems, and testified that she had frequently discussed Vickie's habitual desertion of her home and failure to attend school with Vickie, and

had instructed her not to leave home without Saundra's knowledge and permission . . . to no avail.

Ultimately the judgment of the trial court was:

> The Court having previously heard evidence and having the matter under advisement now finds that Vickie Elaine Simmons was born July 29, 1961, that she is now fourteen (14) years of age and at the time of filing of the petition alleging delinquency she resided with her parents at 2081 Lindbergh Road, West Lafayette, Tippecanoe County, Indiana. The Court further finds *Vickie* Elaine Simmons *is a delinquent child in that she is habitually truant and that she is incorrigible,* ungovernable, habitually disobedient and beyond the control of her parents. Evidence is now heard regarding disposition. And the Juvenile Referee, being duly advised, now recommends Vickie Elaine Simmons, minor subject, be committed to the Indiana Girls School until such time as she shall attain the age of twenty-one (21) years unless otherwise sooner released by proper authorities. David J. Crouse, Juvenile Referee. (emphasis supplied)

Vickie was committed to the Indiana Girls School.

Additional facts relating to the admission of attendance records in evidence are contained in the discussion of ISSUE ONE.

## ISSUES

Vickie presents three issues for our consideration:

(1) Were Klondike's attendance records erroneously admitted into evidence because the person making the entries did not have personal knowledge of the absences represented by the entry?

(2) Was the evidence of absenteeism offered by the State sufficient to prove that Vickie was a confirmed truant?

(3) Is evidence of repeated desertion of her home by Vickie sufficient to prove that she was incorrigible?

*PARTIES' CONTENTIONS*—Vickie argues that Klondike's attendance records were improperly admitted because Carolyn Bridge (Bridge), who made the entries, did not have personal knowledge of her absences. She next contends that the evidence was insufficient for a finding of habitual truancy as the State did not present

any evidence to demonstrate on which days Vickie was actually truant, or otherwise absent, or whether those days established a pattern sufficient to justify a finding that she was a confirmed truant. Finally, she argues that proof of repeated desertion from home does not justify a finding of incorrigibility.

The State responds that Klondike's attendance records were properly admitted as the records were made in the normal course of the school's activity. The State further argues that the evidence was sufficient to sustain the judgment that Vickie was a confirmed truant and that evidence of repeated desertion from her home is sufficient to prove a charge of incorrigibility.

*DECISION*

*ISSUE ONE*

*CONCLUSION*—Klondike's attendance records were properly introduced under the "business records" exception to the hearsay rule.

Juvenile matters are considered civil, rather than criminal, in nature. *State ex rel. McClintock v. Hamilton Circuit Court* (1968), 249 Ind. 333, 232 N.E.2d 356, but they are adversarial. *State ex rel. Duffy v. Lake Juvenile Court* (1958), 238 Ind. 404, 151 N.E.2d 293 and the "hearsay rule"[1] applies in juvenile proceedings. *In re Green* (1952), 123 Ind. App. 81, 108 N.E.2d 647.

One of the recognized exceptions to the hearsay rule is the "business records doctrine". By the terms of this exception:

[D]ocumentary evidence is admissible if identified by its entrant, or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both the duty to so record *and personal knowledge of the*

---

1. Hearsay can be defined as: testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, 484, *quoting* McCORMICK, EVIDENCE § 225.

*transaction* represented by the entry. American United Life Insurance Company v. Peffley (1973), 158 Ind. App. 29, 301 N.E.2d 651, 656 (emphasis supplied).

*See also Herman v. State* (1965), 247 Ind. 7, 210 N.E.2d 249, *cert. denied,* 384 U.S. 918.

The essence of Vickie's objection to the admission in evidence of Klondike's attendance records is that the notations made by the entrant (Bridge) as to her absences were made without personal knowledge on Bridge's part.

This precise question has not been decided in Indiana, although personal knowledge of the transaction is generally considered a prerequisite for the admittance of business records. *Wells v. State* (1970), 254 Ind. 608, 261 N.E.2d 865. However, at least one state Arizona, has held that school attendance records are admissible under the "business records" exception to the hearsay rule. *Parsons v. Smithey* (1976), 109 Ariz. 49, 504 P.2d 1272; *Snyder v. Beers* (1965), 1 Ariz. App. 497, 405 P.2d 288, 291.

The attendance procedure utilized at Klondike was as follows: At the beginning of the first period of the school day, each teacher noted the names of absent students on a form and posted the form outside the classroom. An office worker then collected the forms and took them to Bridge in the principal's office. She compiled a list of the students listed as absent by the teachers and sent duplicates of that list to the teachers. Any discrepancies between actual attendance and the list were to be reported by the teachers to the principal's office. Bridge would then record any unexcused absences in the attendance ledger. In testifying she identified the attendance records, that the notations appearing therein were made by her based on the information given her, and that it was her duty to make the notations.

This procedure is akin to classic "double hearsay".[2] The business record contains an assertion by someone other than the maker (Bridge). However, Bridge did know of her own knowledge that she was told of Vickie's absence by teachers whose duty it was to make such reports in the regular course

2. Laughlin, *Business Records and the Like*, 46 IOWA L. REV. 276, 296 (1961).

of school business.[3] And further she made the notations of Vickie's absences as part of her duties in the normal course of school business. This combination of circumstances constitutes a reliable indicator of trustworthiness sufficient to warrant admission of the school attendance records into evidence even though the entrant (Bridge) did not have personal knowledge of Vickie's absences. *CTS Corp. v. Schoulton* (1976), Ind. App. 354 N.E.2d 324; *Parsons v. Smithey, supra; Snyder v. Beers, supra. See also* McCORMICK, *Evidence* § 510.

Vickie's reliance on *Wells* is misplaced. There the report filled out by a police officer in the regular course of his duties as an employee of the Shelbyville Police Department consisted of statements made by a third party who was *not* an employee of the Shelbyville Police Department, and who was *not* acting in the regular course of business of the police department.

Thus, we conclude that under these circumstances there was sufficient built-in reliability to justify the trial court's action in allowing admission of the attendance records into evidence.

*ISSUE TWO*

*CONCLUSION*—The evidence was sufficient to prove Vickie a habitual truant.

The State of Indiana requires a child of fourteen (Vickie's age) to attend school. The compulsory school attendance statute, IND. CODE § 20-8.1-3-17, provided in pertinent part:

> Subject to the specific exemptions under this chapter, each child who is not less than seven (7) years of age and not more than sixteen (16) years of age shall attend either a public school or some other school which is taught in the English language. (the Compulsory School Attendance Statute herein)

Because she failed to attend school Vickie was adjudged a delinquent child under the terms of IND. CODE § 31-5-7-4(3), which was in effect at the time in question:

---

3. IND. CODE § 20-8.1-3-23, *Attendance Records.* — An accurate daily record of the attendance of each child who is not less than seven [7] and not more than sixteen [16] years of age shall be kept by each teacher in every public and private school. This record shall be open at all times for inspection by attendance officers, school officials and agents of the division of labor. Every teacher shall answer fully all lawful inquiries made by an attendance officer, school official or agent of the department of labor.

31-5-7-4. "Delinquent child" defined.— The words "delinquent child" shall include any boy under the full age of eighteen (18) years and any girl under the full age of eighteen (18) years who:

. . .

(3) Is habitually truant;

And then she was committed to the Indiana Girls' School under IND. CODE § 20-8.1-3-31:

20-8.1-3-31. Confirmed truants.— On petition or recommendation of the attendance officer and superintendent having jurisdiction, a child who habitually absents himself from school in violation of this chapter [20-8.1-3-1 — 20-8.1-3-37] may be tried by the judge of any juvenile, circuit or superior court. If the judge finds that the child is a confirmed truant, he may:

(a) Commit the child to the Indiana Boys' School or the Indiana Girls' School, as appropriate;

(b) Commit the child to another custodial institution located in this state; or

(c) Place the child in the care of a probation officer.

The court may suspend the application of this chapter in cases involving juvenile delinquents or incorrigibles whenever, in his judgment, the welfare of any child warrants this action. [IC 1971, 20-8.1-3-31, as added by Acts 1973, P.L. 218, § 1, p. 1097.]

Juveniles are constitutionally entitled to a standard of proof of "beyond a reasonable doubt" when the juvenile is charged with an act which, but for his or her age, would constitute a crime. If, however, the child is merely charged with an act of delinquency which is not a crime, the standard of proof required is a "fair preponderance of the evidence". *In re Winship* (1970), 397 U.S. 358; *Warner v. State* (1970), 254 Ind. 209, 258 N.E.2d 860. Habitual truancy is obviously not a crime if committed by an adult. Therefore, the standard of proof necessary to sustain Vickie's conviction is by a "fair preponderance of the evidence".

Vickie concedes in her brief, as she must, that the State proved that she missed school often, but did not prove that she "absented herself" from school or that she was "habitually truant".

It is true that there are exceptions to the Compulsory School Attendance Statute. See IND. CODE § 20-8.1-3-18, -19 (e.g. government service disability). However, no evidence was presented as to these exceptions and it was not necessary for the State to negate the exceptions. *Day v. State* (1968), 251 Ind. 399, 241 N.E.2d 357. Our Supreme Court, in *State v. O'Dell* (1918), 187 Ind. 84, 118 N.E. 529 held that in a prosecution of a parent for violation of the compulsory attendance statute the burden of proof was upon the defendant to show that he fell within one of the exceptions. We see no reason why a child charged with habitual delinquency should not have the same burden.

No Indiana case defines "habitual truant" as such. The term has been defined by foreign jurisdictions to mean that conduct "which amounts to a refusal to attend school in defiance of parental authority." *In re Alley* (1921), 174 Wisc. 85, 182 N.W. 360. "Habitual truancy" has also been defined as:

The willful unexcused refusal of a pupil to attend school in defiance of parental authority and in violation of an applicable compulsory school attendance law. *Chicago Board of Education v. Couba* (1976), 41 Ill. App. 3d 858, 354 N.E.2d 630.

The common thread in cases defining "habitual truancy" is the "willful refusal to attend school in definance of parental authority". *Ex parte Drye* (1930), 250 Mich. 210, 229 N.W. 623; *State v. Freudenberg* (1917), 166 Wisc. 35, 163 N.W. 184.

The unrefuted evidence is that Vickie missed, during the period from November 3, 1975, to February 25, 1976, twenty-eight (28) of sixty-two (62) school days for which absences no excuse was offered. To no avail she was repeatedly told by her parents not to miss school. Thus, there was sufficient evidence to allow the Juvenile Referee to reasonably, by a fair preponderance of the evidence, find Vickie habitually truant, and thus a delinquent child.

*ISSUE THREE*

*CONCLUSION* — Evidence of ungovernability, including repeated desertion of Vickie's home, is sufficient to prove incorrigibility.

The trial court also found Vickie was a juvenile delinquent because:

> ... she is *incorrigible*, ungovernable, habitually disobedient, and beyond the control of her parents .... (emphasis supplied)

which conclusion was based on IND. CODE § 31-5-7-4 (in part):

> The words *"delinquent child"* *shall include any* boy under the full age of eighteen years and any *girl* under the full age of eighteen years *who:*
> (2) is *incorrigible*, ungovernable or habitually disobedient and beyond the control of his parent, guardian or other custodian; (emphasis supplied)

Prior to the time in question, a further basis for delinquency was repeated desertion of home. But the elimination of that particular provision of the delinquency statute[4] does not eliminate, as Vickie contends, such conduct from consideration as constituting incorrigibility. There is nothing in the statute or its history that warrants such a contention. So repeated desertion of home may be one form of incorrigibility.

Vickie was not only frequently absent from home, but she did so willfully in the face of repeated parental instructions not to do so. Discussions with her parents were futile. She simply disobeyed them, refusing to attend school or remain at home. Upon being ordered to the Scholar Home by the court, she ran away again.

Indiana has not defined the term "incorrigible child". Other jurisdictions have defined such a child as "one who is incapable of being managed or corrected or disciplined in his present situation and under his present control." *In re Hook* (1922), 95 Vt. 497, 115 Atlantic 730; *Mahaffey v. Mahaffey* (1936), 176 Miss. 733, 170 So. 289.

In *In Re Shelton* (1902), 11 Pa.Dist. R 155, the Pennsylvania Court distinguished incorrigibility and delinquency by noting that incorrigibility is "... a continual pattern of disobedience of parental communications, viciousness and general bad conduct." Delinquency, on the other hand, may be "found for a single act that is violative

---

4. IND. CODE § 31-5-7-4.1 effective July 29, 1975 deleted the provision of IND. CODE § 31-5-7-4 "without just cause and without the consent of his parents, guardian, or custodian, repeatedly deserts his home or place of abode" as a ground for delinquency.

of the laws of the state." 11 Pa. Dist. R 158, 159.

When the conduct of the child is such that reformation is impossible by the present parental control, the child is deemed "incorrigible" and the power of the State is brought to bear. *Hogue v. State* (1920), 87 Tex. Crim. Rep. 170, 220 S.W. 96. Colorado views incorrigibility as "that state which renders the child unmanagable by parents or guardians." *People ex rel. Thompson v. Purcell* (1921), 70 Colo. 399, 201 P. 881.

Vickie's consistent pattern of disregarding the orders of her parents justified the trial court's finding, by a fair preponderance of the evidence, that she was incorrigible.

The judgment is affirmed.

White, J. concurs;

Garrard, J. (by designation) concurs.

NOTE — Reported at 371 N.E.2d 1316.