**In the Matter of L.J.M., a Child Alleged to be a Delinquent Child.**

No. 4–583A152.

Court of Appeals of Indiana, Fourth District.

Jan. 24, 1985.

Susan K. Carpenter, Public Defender, Frances L. Watson, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

YOUNG, Judge.

L.J.M. appeals the order of the Jay County Circuit Court committing him to the Indiana Boys School until age twenty-one. Because we reverse, we will discuss only the following issues that will be relevant to the trial court on remand:

1) whether L.J.M. was entitled to notice prior to his removal from his place of residence;

2) whether the evidence was sufficient to support the revocation of his probation;

3) whether the testimony of L.J.M.'s counselor should have been excluded due to a counselor-client privilege; and

4) whether the counselor's testimony was inadmissible as hearsay.

■ L.J.M. was originally adjudged a delinquent when he was fifteen years old for committing what would have been reckless homicide while driving a motor vehicle if committed by an adult. On March 4, 1982, he received a suspended commitment to the Indiana Boys School. He was then committed to Black Lake Lodge, a private juvenile care facility, and placed on probation until age twenty-one subject to good behavior and successful completion of the services offered at Black Lake Lodge.[1]

In April of 1983, the Jay County Probation Department received a progress report from Black Lake Lodge which noted that L.J.M. had violated several housing rules and failed several classes at school. The probation department petitioned the court to revoke L.J.M.'s probation. The court immediately ordered the arrest and detention of L.J.M. in the Jay County Jail. At his hearing on April 16, 1983, the court excluded evidence of the alleged housing rule violations as hearsay. L.J.M.'s caseworker was allowed to testify as to L.J.M.'s sometimes defiant attitude in counseling sessions and his poor grades. The court revoked L.J.M.'s probation on the basis of this testimony and ordered him committed to the Indiana Boys School.

■ L.J.M. raises several questions concerning the procedures applicable to juvenile probation revocation hearings. We believe the juvenile code requires probation to be treated as any other disposition alternative. Therefore, any change in a juvenile's disposition order, including revoking his probation, should be treated as a modification of the original order. The applicable statutory provision is IND.CODE 31–6–7–16 (1982), which states:

(a) While the juvenile court retains jurisdiction under IC 31–6–2–3, it may modify any dispositional decree upon its own motion, or upon the motion of the child, the child's parent, guardian, custodian, or guardian ad litem, *the probation officer,* the caseworker, the prosecutor, the attorney for the county department, or any person providing services to the child or his parent, guardian, or custodian under a decree of the court.

(b) If the petitioner requests an *emergency change in the child's residence, the court may issue a temporary order.* However, the court shall then give notice to those persons affected and shall hold a

---

1. Unlike courts in a criminal action, the juvenile court is not required to suspend a sentence as a prerequisite to imposing probation. With or without probation, the court retains jurisdiction over the child and may modify its disposition decree at any time. IND.CODE 31–6–2–3

(1982). Jurisdiction ceases to exist only when the child reaches age twenty-one, is discharged, or is committed to the Department of Corrections. *Id.; see also State v. Shrode,* (1949) 119 Ind.App. 57, 83 N.E.2d 900.

hearing on the question if requested. If the petition requests *any other modification*, the court *shall give notice* to those persons affected and may hold a hearing on the question. If a hearing is required, IC 31–6–4–15 governs the preparation and use of a modification report. This report shall be prepared if the state or any person other than the child or his parent, guardian, guardian ad litem, or custodian is requesting the modification.

(emphasis added)

■ In this case, the trial court believed the notice required by the statute was unnecessary because the hearing was conducted as a probation revocation according to the criminal code. Criminal procedural rules only apply in juvenile proceedings when the matter in question is not addressed by the juvenile code. *See* IC 31–6–7–1(a). Probation is specifically listed as a disposition alternative for a child adjudged delinquent. IC 31–6–4–16 (repealed; now 31–6–4–15.3 to –15.8). Accordingly, any change in probation is a modification of disposition and the modification statute (including the requirement of notice) must be strictly followed.

■ No emergency was present in this case to justify L.J.M.'s removal from Black Lake Lodge without notice. The probation department merely sought to revoke his probation; it did not allege an emergency change in residence was needed. Thus the court erred in placing L.J.M. in jail.

■ Even if the court had given L.J.M. prior notice, we believe his arrest and detention were improper in these circumstances. Although he had allegedly violated the terms of his probation, he had not committed a crime for which he could be arrested. *See W.M. v. State*, (1982) Ind.App., 437 N.E.2d 1028; *In re Jennings*, (1978) 176 Ind.App. 277, 375 N.E.2d 258. Furthermore, even the criminal code prohibits arrest for probation violation unless there is a risk of the person fleeing the jurisdiction or causing harm to others. IC 35–7–2–2. More importantly, the policy of the juvenile code is to keep children out of detention whenever possible, favoring the

use of shelter care facilities. *See* IC 31–6–4–6.5(b). As a qualified shelter care facility, Black Lake Lodge was the appropriate place for L.J.M. to remain until his disposition decree was modified.

■ In spite of the court's error, we can offer L.J.M. no remedy as he has been transferred to Boys School and is no longer in jail. *See N.J.R. v. State*, (1982) Ind.App., 439 N.E.2d 725. We would remind the trial court, however, that the detention of a juvenile prior to a hearing on the merits should be used sparingly and only in cases where the juvenile is in danger, is causing harm to others, or is likely to flee his current residence. *Cf.* IC 31–6–4–5(e) (factors considered in deciding to detain an allegedly delinquent child).

■ L.J.M. also alleges that the court's decision to revoke his probation was based upon insufficient evidence. In accord with our determination that a probation revocation is in fact a modification of disposition, our review of the court's decision is limited. A court has wide latitude in dealing with juveniles, its goal being to rehabilitate rather than punish. The disposition alternatives listed in IC 31–6–4–16 are intended to allow the court to tailor its disposition to the needs of the particular child before it, making use of all available community services. The choice of a specific disposition is within the discretion of the trial court, subject to the statutory considerations of the welfare of the child, the safety of the community, and the code's policy of favoring the least harsh disposition. IC 31–6–4–16(d). We may overturn L.J.M.'s disposition order only if we find the court has abused its discretion because its conclusion and judgment are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Summerlot v. Summerlot*, (1980) Ind.App., 408 N.E.2d 820.

The evidence presented at the hearing consisted solely of the testimony of Paul Burrus, L.J.M.'s caseworker at Black Lake Lodge. He indicated that L.J.M.'s grades

were poor; the last two grading quarters he had failed three classes and received marginal grades in the others. According to Burrus, adjustment to the public school system was vital to a child's success in the Black Lake Lodge program; L.J.M.'s grades suggested he was not trying, because his potential was much greater. He also stated that L.J.M. was generally cooperative, but had on occasion been defiant during counseling sessions. He further testified that Black Lake Lodge had a four-level behavioral modification program, that L.J.M. was presently at level two, and that he had at one time achieved the highest level of privileges, level four. Finally, Burrus reported that the Black Lake Lodge staff recommended that L.J.M. remain in the program for at least five more months.

From this testimony, the court concluded that L.J.M. was not making reasonable progress at Black Lake Lodge and that a modification of his disposition was appropriate. The court then decided that committing L.J.M. to the Boys School would best serve his needs as it was a rehabilitative facility offering an on-campus school and access to medical and some counseling facilities.

■ In the particular circumstances of this case, we believe the court abused its discretion by removing L.J.M. from Black Lake Lodge. We base our conclusion on the fact that the record does not support the trial court's finding that committing L.J.M. to the Indiana Boys School was in his best interest or was necessary for the safety of the community as required by IC 31–6–4–16(d).[2]

2. IC 31–6–4–16(d) provides:
   When consistent witht he safety of the community and the welfare of the child, the juvenile court shall enter a dispositional decree that:
   (1) least interferes with family autonomy;
   (2) is least disruptive of family life;
   (3) imposes the least restraint on the freedom of the child and his parent, guardian, or custodian; and
   (4) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

The court relied heavily on the assumption that L.J.M.'s poor grades indicated he was not cooperating in the Black Lake Lodge program. If L.J.M. was uncooperative, the court was certainly justified in finding that the stricter atmosphere of the Boys School would best serve his needs. To assume a lack of cooperation solely from poor grades, however, is unreasonable, especially in view of Burrus' testimony that L.J.M. was generally cooperative and that the Black Lake staff recommended he remain in the program.

■ The trial court noted that it would be grossly unfair and improper to use poor grades as a basis to impose a harsher disposition order if the child was unable to do well in school. We are likewise hesitant to use poor grades as a reason to remove a child from a shelter care facility unless it is affirmatively shown that the child's potential was substantially greater and that his grades were merely symptomatic of his general failure to cooperate in his rehabilitation program.[3] In this case it was admitted that L.J.M. was generally cooperative. Furthermore, there was no objective evidence presented regarding L.J.M.'s scholastic abilities, merely Burrus' conclusory statement that L.J.M.'s potential was much greater. We therefore hold that poor grades alone cannot support a finding of uncooperativeness that will justify imposing a harsher disposition on a juvenile adjudged delinquent.

■ Although we reverse L.J.M.'s commitment to the Boys School on the basis of uncooperativeness, it is not our function to prescribe a disposition that would

3. It does not appear from the record that Black Lake Lodge had an established policy regarding the academic performance required of residents. In fact, L.J.M.'s caseworker, who was responsible for receiving L.J.M.'s grade reports and counseling with him, merely stated that *adjustment* to the public school system was a vital part of the Black Lake Lodge program. He did not testify that certain grades were expected of L.J.M. or that he was counseled or warned that his failure to maintain certain grades at school would result in his removal from the program.

best serve L.J.M.'s needs. Furthermore, due to the long passage of time during the pendency of this appeal, certain alternatives, such as returning L.J.M. to a private shelter care facility, may no longer be feasible or even meet L.J.M.'s current needs. It may well be in his best interest now to remain at the Indiana Boys School. Accordingly, we remand this cause to the trial court for a hearing to determine the proper disposition, considering the statutory factors of the welfare of the juvenile, the safety of the community, and the policy of favoring the least restrictive disposition. IC 31–6–4–16(d).

L.J.M. also objects to the admission of testimony from his caseworker, Paul Burrus. He claims that certain statements were hearsay and other testimony was a confidential communication subject to a counselor-client privilege. He acknowledges that this particular privilege does not presently exist in Indiana, but urges us to extend the psychologist-client privilege to encompass such counselors.

■■■ We cannot make an extension in view of the specific language of the statute. Evidentiary privileges are generally disfavored and must be strictly construed. *Ernst & Ernst v. Underwriters National Assurance Company*, (1978) 178 Ind.App. 77, 381 N.E.2d 897. Indiana's psychologist-patient privilege applies only to certified psychologists.[4] IC 25–33–1–17. Because Burrus is not a certified psychologist, this privilege does not protect his counseling sessions with L.J.M.

■■■ Concerned as we are with preserving the rights guaranteed juveniles by law, we have searched for a statutory privi-

lege that protects disclosures to youth counselors. The law recognizes few evidentiary privileges.[5] Confidential communications made to a school counselor, however, are protected from disclosure according to IC 20–6.1–6–15.[6] As the statute does not define "school counselors" we must give the term its ordinary meaning. *R.L. v. State*, (1982) Ind.App., 437 N.E.2d 482. Thus, the privilege would apply to counselors at all schools, both public and private, but would not include counselors at purely residential facilities, such as Black Lake Lodge. We recognize that there are compelling reasons to protect disclosures made to anyone who offers counseling services. The legislature, however, has chosen to extend a privilege to only two groups of counselors, certified psychologists and school counselors. We are thereby precluded from applying either privilege to caseworkers[7] at juvenile shelter care facilities.

■■■ We also find no merit in L.J.M.'s argument that Burrus' testimony about his grades and attitude was inadmissible as hearsay. Although the hearsay rule applies in a hearing to determine a child delinquent, *Simmons v. State*, (1978) 175 Ind. App. 333, 371 N.E.2d 1316, it is not applicable to a modification proceeding. Hearsay is prohibited in a delinquency hearing because the court is deciding the guilt or innocence of the child. Thus, the child is entitled to certain constitutional protections, including the right to cross-examine witnesses, a right impinged upon by the use of hearsay evidence. Once a finding of guilt or innocence is made, however, the

4. Only persons holding a doctoral degree in psychology or its equivalent may be certified. IC 25–33–1–5. Burrus was in the process of completing his master's degree in pre-clinical psychology at the time of the hearing.

5. Indiana recognizes an evidentiary privilege in the following relationships: marital, clerical, newspaper source, physician-patient, attorney-client, accountant-client, psychologist-client, and school counselor-student.

6. IC 20–6.1–6–15 provides:

A school counselor is immune from disclosing privileged or confidential communication made to him as a counselor by a student. The matters communicated are privileged and protected against disclosure.

7. We note that probation officers are also denied a statutory privilege. Statements made by a juvenile to his probation officer are not confidential and *Miranda* warnings are required prior to any inquiry by the officer. *Massey v. State*, (1978) 267 Ind. 504, 371 N.E.2d 703.

court must focus on the specific needs of the juvenile to determine the type of disposition that would serve his best interests and that of the community. Excluding hearsay evidence in disposition hearings would in many cases disserve the child by excluding relevant information that might support a less restrictive disposition.

■ The juvenile code addresses this problem by specifically allowing the admission of "any report" that contains evidence of probative value in modification hearings, "even if that evidence would otherwise be excluded." IC 31–6–4–19(f). A similar provision applies to the original disposition hearing. IC 31–6–4–16(b) (now IC 31–6–4–15.3(b) (Supp.1984)). Accordingly, the entire progress report compiled by Paul Burrus, if of probative value, could have been admitted into evidence. Burrus was therefore entitled to testify as to part of the report, including L.J.M.'s grades and general attitude.

We reverse and remand for proceedings consistent with this opinion.

MILLER, P.J., concurs.

CONOVER, J., dissents with opinion.

CONOVER, Judge, dissenting.

I respectfully dissent. The majority here engages in an evidence-weighing exercise. We may not do so on appeal.

There is substantial evidence supporting the trial court's determination this child properly was transferred to Boys' School. We should not disturb that determination for all the usual reasons, but especially because of the sensitive area in which this case is postured. This is a juvenile matter where the best interests of the child are paramount. Substituting our judgment for that of the trial court is particularly inappropriate in this most delicate area. Judgment in such matters is most particularly for the field, not here from a cold record.

I would sustain the trial court.